IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSE M. REGAN and LOIS PHILLIPS,

    Plaintiffs,

v.

FIRST NATIONAL BANK OF PENNSYLVANIA,

    Defendant.

2:16cv508

**Electronic Filing**

# MEMORANDUM OPINION

## I. Introduction

This matter is before the Court on a motion to dismiss (ECF No. 9) filed by Defendant First National Bank of Pennsylvania ("First National"). In the complaint, Plaintiffs Rose M. Regan ("Regan") and Lois Phillips ("Phillips") seek damages arising out of First National's alleged "failure" to ensure that the proceeds of a money market account ("Account") maintained with First National by their father, John J. Strahsmeier ("Decedent"), were paid to Regan upon his death, as he allegedly intended. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons set forth below, First National's motion will be granted.

## II. Factual Background

Decedent died testate on September 13, 2008, survived by Plaintiffs and their brother, John T. Strahsmeier. The Account at issue was created on or about February 13, 2006. Sometime in October 2006, the Account was converted into a trust account "in the name of John J. Strahsmeier, ITF Rose Regan[.]" (Compl., ECF No. 1 ¶ 7). It is Regan's position that she was to be "the beneficiary of any and all funds on deposit in that account at the time of [Decedent's] death." *Id.* "Regan did, in fact, receive the funds on deposit in the subject account in or about

October of 2008 and in May of 2009, in the amount of $149,200.26." (Id. ¶ 10).

In January 2009, Decedent's estate was probated in the Orphans' Court Division of the Court of Common Pleas of Allegheny County. Decedent's will "directed that his residuary estate was to be distributed to all three of his surviving children in equal shares, subject to a reduction . . . for a loan made by Decedent to Regan during his lifetime." (Id. ¶ 12).

On July 1, 2011, Judge Lawrence O'Toole of the Allegheny County Court of Common Pleas issued a Memorandum Opinion and Order,[1] in which he ruled, in pertinent part, that "John T. [Strahsmeier] has presented clear and convincing evidence to establish that all funds in the [account] are assets of the estate." (ECF No. 1-2 at 5). "Despite the title," Judge O'Toole concluded, "the account was meant to be a 'convenience account' and all estate assets were to be gathered and deposited into that account after the Decedent's death." (Id. at 4). Thus, Judge O'Toole ordered Regan to deposit the sum of $149,200.26, which she had withdrawn, back into the account. Id. at 5. Plaintiffs filed a motion for reconsideration of Judge O'Toole's order, which was denied on July 25, 2011.[2] (ECF No. 1-3).

Plaintiffs appealed Judge O'Toole's decision to the Superior Court of Pennsylvania. (ECF No. 1 ¶ 14). In its Opinion,[3] the Superior Court framed the issues as follows:

> We must decide whether the orphans' court was correcting in determining that [John T.] Strahsmeier, as co-executor, proved by clear and convincing evidence that Decedent, when he created the ITF Account, had an intent contrary to Regan's presumed right of survivorship.[4]

---

[1] The Memorandum Opinion and Order of July 1, 2011, is attached as Exhibit A to the complaint.

[2] Judge O'Toole's second Memorandum Opinion and Order is attached as Exhibit B to the complaint.

[3] The Superior Court's Opinion is attached as Exhibit C to the complaint.

[4] The presumption arose from the Multiple-Party Accounts Act, which states in pertinent part:

> [a]t the death of the trustee or the survivor of two or more trustees, any sum remaining on deposit belongs to the person or persons named as beneficiaries, if surviving, or to the survivor or

2

(ECF No. 1-4 at 8-9). After reviewing the evidence, the Superior Court affirmed the decision of the orphans' court, finding that

> [t]he record supports overriding the distribution scheme enunciated in the [Multiple-Party Accounts Act] because co-executor [John T. Strahsmeier] proved by clear and convincing evidence that Decedent had an intent contrary to Regan's right of survivorship at the time he revised to the ATF Account to include Regan's name. Because Regan had no right to the monies in the ITF Account, they must be returned to the Estate as directed by the orphans' court.

(Id. at 16).[5]

Plaintiffs initiated this action on April 26, 2016, by filing a two-count complaint against First National. In count I, Regan asserts a breach of contract claim. She "maintains that she was a third party beneficiary of the contract entered into between the Decedent and the Defendant for the establishment of a Totten Trust account no. 97005064, which was designated as an 'ITF' account naming Regan as the beneficiary." (ECF No. 1 ¶ 16). As such, she alleges that First National's "failure . . . to ensure that the account was established in a manner as was communicated to Defendant by Decedent, to wit, a Totten Trust account naming Regan as the beneficiary to whom the Account proceeds were to be payable upon the death of the Decedent, has caused her to be deprived of a sum in excess of $149,00.00 [sic]." (Id. ¶ 17). In count II,

---

> survivors of them if one or more die before the trustee or last surviving trustee, unless there is clear and convincing evidence of a contrary intent.

20 Pa. C.S. § 6304(b).

[5] Plaintiffs claim that "the Superior Court held that the Defendant did not complete the signature cards in a proper manner so as to enable Regan to receive all funds on deposit in th[e] account at the time of Decedent's death, as the Bank personnel failed to change the designate on the signature card(s) from 'Individual' to 'Totten Trust'." (ECF No. 1 ¶ 14). This is, at best, a misunderstanding of the Superior Court's holding and, at worst, a complete misrepresentation of it. The Court's own review of the Superior Court's decision reveals that it "held" no such thing. The Superior Court did point to the fact that another of Decedent's accounts was owned by Decedent and John T. Strahsmeier as "joint [tenants] with right of survivorship" to show that "Decedent was aware of the different options and the choice for each account reflected his intention." (ECF No. 1-4 at 12). This rebutted Plaintiffs' contention that it was an oversight that ownership of the Account was never changed to "Totten Trust" from "Individual." However, the Superior Court never even suggested, let alone held, that "Defendant did not complete the signature cards in a proper manner." Just the opposite, in fact.

3

Phillips avers that she "has paid substantial sums in excess of $40,000 to litigate the matter . . . which expenditures would not be necessary had the Defendant properly established the account in accordance with the intentions of the Decedent." (Id. ¶ 20).

First National moved to dismiss on June 27, 2016. (ECF No. 9). Plaintiffs filed a brief in opposition on July 27, 2016, (ECF No. 18), to which First National filed a reply on August 5, 2016 (ECF No. 19). The matter is ripe for review.

## III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 570). In ruling on a motion to dismiss, "the Court may consider allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Gemmell v. Hall, 2007 WL 61001, at *1 (W.D. Pa. Jan. 5, 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57) (internal citation omitted).

4

In <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit discussed its decision in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing <u>Twombly</u> in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of <u>Twombly</u> and <u>Iqbal</u> as follows:

> After <u>Iqbal</u>, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1948. The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. <u>See</u> <u>Id.</u> at 1949-50; <u>see also</u> <u>Twombly</u>, 505 U.S. at 555, & n. 3.

<u>Fowler</u>, 578 F.3d at 210.

Thereafter, in light of <u>Iqbal</u>, the <u>Fowler</u> court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [<u>Iqbal</u>, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

<u>Fowler</u>, 578 F.3d at 210-11 (emphasis added).

**IV.  Analysis**

First National seeks to dismiss the complaint as untimely and, failing that, argues that Plaintiffs' claims are barred by collateral estoppel. The Court agrees.

5

A.    **Statute of Limitations**

Under Pennsylvania law, a cause of action for breach of contract is subject to a four-year statute of limitations. 42 Pa. C.S. § 5525. "[T]he statute begins to run on the date the action accrues – the date of the breach." McGaffic v. City of New Castle, 973 A.2d 1047, 1052 (Pa. Commw. Ct. 2009) (citing Packer Soc. Hill Travel Agency, Inc. v. Presbyterian Univ. of Pa. Med. Ctr., 635 A.2d 649, 652 (Pa. Super. Ct. 1993)). The discovery rule, however, may toll the statute "when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).

Here, the breach occurred, if at all, in 2008 when First National allegedly failed "to ensure that the account was established in a manner as was communicated to Defendant by Decedent[.]" (ECF No. 1 ¶ 17). The statute was then tolled until Regan learned of the injury caused by the alleged breach – i.e., that she had to return the funds she had withdrawn from the Account – when Judge O'Toole issued his first Opinion and Order on July 1, 2011, declaring that the funds in the Account belonged to Decedent's estate. Since this action was not commenced within four years of that date, it is time-barred.

Plaintiffs argue, however, that the statute should have been tolled until the issuance of the Superior Court's decision on September 7, 2012, because "[t]he issue of the failure of the Defendant to have placed an 'X' or a checkmark next to the category 'ITF' rather than retaining it next to the word 'Individual' when the Decedent converted the account into an 'ITF' account was first raised by the [] Superior Court in its Opinion[.]" (ECF No. 18 at 3). This argument is baseless, both factually and legally. As First National points out, the Signature Card Agreement to which Plaintiffs are referring was part of the certified record before the Orphans' Court. Thus, Regan knew or should have known the cause of her alleged injury – i.e., First National's

"failure" to have placed an "X" next to "ITF" instead of "Individual" – long before she now claims. Additionally, and perhaps more importantly, Plaintiffs point to no authority discussing the legal import of this "discovery," and the Court had found none. Rather, the limitations period began to run when Regan knew of the "salient facts concerning the occurrence of her injury and who or what caused it." Murray v. Hamot Med. Ctr. of City of Erie, 633 A.2d 196, 201 (Pa. Super. Ct. 1993) (internal citations and quotation marks omitted). That occurred, at the latest, when Judge O'Toole issued his decision on July 1, 2011. Nothing in the Superior Court's decision – as it is actually written, not as Plaintiffs describe it in the complaint – added to what Regan already knew or should have known about the nature of her injury or its source.

### B. Collateral Estoppel

Even if this action is timely, Plaintiffs' claims are nonetheless barred by collateral estoppel. Collateral estoppel, or issue preclusion, "bars a second or successive litigation of an issue of fact or law that was actually litigated and resolved in an earlier litigation, even if the issue recurs in the context of a different claim." Welch v. Bank of Am., 2014 WL 550595, at *6 (W.D. Pa. Feb. 11, 2014) (internal citation and quotation marks omitted). Under Pennsylvania law, collateral estoppel applies if:

> "(1) the issue decided in the prior adjudication was identical with the one presented in the later action;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom the plea (estoppel) is asserted was a party or in privity with a party to the prior adjudication; and
>
> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action."

Id. (quoting Shuder v. McDonald's Corp., 859 F.2d 266, 273 (3d Cir. 1988)).

Plaintiffs seem to concede the second, third, and fourth requirements, as they have not

7

advanced any arguments that could even be generously construed as addressing those points. The parties' dispute instead turns on whether the issue decided in the Orphans' Court litigation is also presented in this action. First National argues that the issue of Decedent's intent with respect to the Account was actually litigated in Orphan's Court, is central to Plaintiffs' claims, and cannot be re-litigated here. Plaintiffs do not dispute that the "Pennsylvania State Court addressed the issue of [Decedent's] intent, and predicated its decision, in part, on the intent manifested by him as reflected in the account documents." (ECF No. 18 at 4). However, according to Plaintiffs, that should not mean that their claims are entirely barred because "the issue of the Bank's potential liability for not having presented the paperwork to [Decedent] or having explained the effect of the various categories and items on the signature card for the subject account was not litigated." (Id.).

Here again, First National has the better argument. The issue of Decedent's intent was actually litigated in the Orphans' Court and the Superior Court, with both courts deciding that, despite establishing the account "in trust for" Regan, Decedent did not intend to vest her with a right of survivorship but instead wished for the Account funds to become part of his estate upon his death.[6] And contrary to Plaintiffs' contention, the issue of Decedent's intent is crucial to the breach of contract claim. Plaintiffs claim that the breach arose from First National's "failure . . . to ensure that the account was established in a manner as was communicated to Defendant by Decedent, to wit, a Totten Trust account naming Regan as the beneficiary to whom the Account proceeds were to be payable upon the death of the Decedent." (ECF No. 1 ¶ 17). But since two state courts have already determined that Decedent did not, in fact, intend for the Account

---

[6] The Court notes that, "[w]here a Rule 12(b)(6) motion raises the issue of collateral estoppel, a court must consider the prior judicial opinion to determine whether issue preclusion bars a plaintiff's claims." Owens v. Residential Credit Sols., Inc., 2015 WL 1566168, at *4 (W.D. Pa. Apr. 8, 2015) (citing M & M Stone Co. v. Pa., 388 F. App'x 156, 162 (3d Cir. 2010)).

8

proceeds to be payable to Regan upon Decedent's death, Regan cannot now argue that the account was not "established in a manner as was communicated to Defendant by Decedent." Likewise, if, as has been determined, Decedent did not intend for the proceeds to become payable to Regan, it cannot be said that First National committed a breach by not properly explaining the import of changing the signature card, as Plaintiffs allege. All of this together spells doom for Regan's breach of contract claim. The state courts' finding as to Decedent's intent is also fatal to Phillip's claim for attorney's fees in Count II, assuming such claim is even legally cognizable – a proposition about which the Court has very serious reservations.[7]

## V. Conclusion

Based on the foregoing, the Court will grant First National's motion to dismiss. The complaint will be dismissed with prejudice in its entirety. An appropriate order will follow.

Date: February 14, 2017

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Robert J. Colaizzi, Esq.
David B. White, Esq.
Katherine J. McLay, Esq.
Lyle D. Washowich, Esq.

(*Via CM/ECF Electronic Mail*)

---

[7] It is well established that "[e]ach litigant pays [her] own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-253, (2010). Thus, even if she had prevailed, Phillips would have had no right to recover fees from her opposing party in the Orphans' Court litigation, let alone from First National, which was not even a party. To the extent recovery of fees would ever be possible, it would only be as an element of damages in a breach of contract action against First National, not as a separate, standalone cause of action brought by someone such as Phillips who was a stranger to the contract at issue. See, e.g., 4 A.L.R.3d 270 (explaining that "courts in several cases have stated generally that a party has the right to recover as damages attorneys' fees incurred in earlier litigation with a third person in which he became involved as a result of breach of contract by his present adversary").